**The below described is SIGNED.**

**Dated: November 13, 2006**

*William J. Thurman*

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **George Love Farming, LLC,** | Bankruptcy Number 06-20612 |
| Debtor. | Chapter 7 |

## MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR FEES

The Trustee's Motion to Sell Real Property came before the Court on August 23, 2006. As part of the Motion to Sell, the Trustee requested fees based on the calculations under 11 U.S.C. § 326.[1]  The Court granted the Motion to Sell but took under advisement its ruling on the Trustee's fees and ordered the Trustee to hold the requested funds in trust.  On November 8, 2006, the Trustee filed his First Application for Compensation.  On the same day, the United States Trustee filed a Memorandum in Support of the Trustee's Fee Application.  In light of these pleadings, the Court issues this Memorandum Decision as its findings of fact and conclusions of law on this matter.

**I.  JURISDICTION AND VENUE**

---

[1] All statutory references hereinafter are to the Bankruptcy Code unless stated otherwise.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). Venue is appropriate under 28 U.S.C. § 1408(1).

## II. BACKGROUND

The Debtor filed for bankruptcy relief under chapter 7 of the Bankruptcy Code on March 7, 2006,. Joel Marker is the duly appointed chapter 7 trustee in this case. At the time of filing, a major asset of the estate was real property located in Box Elder County, Utah (the "Dry Farm"), secured by a trust deed issued in favor of AEGON USA Realty Advisors, Inc. Two days after this case was filed, AEGON filed a Motion for Relief to foreclose on the Dry Farm, and the Debtor filed an objection. The Court held a preliminary hearing on the Motion for Relief on March 13, 2006 and received evidence and considered oral arguments. The Court preliminarily denied the Motion for Relief and continued the hearing until April 11, 2006.

On March 24, 2006, the chapter 7 trustee originally appointed in this case, Mr. Steven Bailey, resigned and Mr. Joel Marker was appointed in his place. On March 30, 2006, the Debtor filed a Motion to Continue the hearing on the Motion for Relief, based in part on the recent appointment of Mr. Marker as the chapter 7 trustee. The Court granted the Motion to Continue, and rescheduled the hearing to April 24, 2006.

On April 24, 2006, the Court held a final hearing on the Motion for Relief, Judge Tom Cornish presiding as a visiting judge. Counsel for AEGON and for the Debtor submitted extensive evidence including two professional appraisers and their corresponding reports. The trustee did not present any evidence or any formal appraisal of the property. Although the trustee had not filed a written response to the Motion for Relief, he argued against the Motion stating his belief that there was equity in the property. On May 10, 2006, the Court issued its

Memorandum Decision and Order Denying the Motion for Relief. In finding that there was equity in the property, the Court stated:

> The Court is impressed with the preparation and skill of all parties involved in this matter. The participation of the chapter 7 trustee, Joel Marker, has been particularly important in aiding the Court's determination. The quality of the arguments and authority advanced by all counsel in this matter has been outstanding.

On May 3, 2006, the trustee filed a Motion to Employ Highland Commercial, Inc. as his real estate broker in this case. The Court granted this Motion on May 18, 2006.

On May 25, 2006, the trustee filed a Motion to Sell the Dry Farm which sought approval of bidding procedures for an eventual sale. The Court held a hearing on this Motion on June 26, 2006. Finding that title to the Dry Farm was held by non-debtor third parties, the Court determined that it lacked discretion to grant the motion without the filing of an adversary proceeding. The Court denied the motion without prejudice.

In light of the Court's ruling, the trustee commenced an adversary proceeding against Geroge Love, Valayne Love, Snowville Farms, LLC, George Love Farming Partnership, and the George Love Family Partnership, on June 28, 2006 seeking authorization to sell the Dry Farm under § 363(h).

On July 13, 2006, the trustee filed a Motion to Confirm the Sale of the Dry Farm, representing that the defendants in the adversary proceeding had voluntarily transferred their interests in the Dry Farm to the chapter 7 estate. The proposed sale price of the Dry Farm was $1,960,000. As part of the Motion, the trustee sought fees of $82,050 as his "statutory commission" under § 326. The Court held a hearing on the Motion on August 10, 2006. Counsel for AEGON and for the Debtor appeared at the hearing in favor of the motion and the trustee's requested fees. The Court approved the Motion to Sell, but ordered the trustee to hold the

requested fees in trust pending further order of the Court. The Court was specifically concerned with the trustee's conformance with its recent Memorandum Decision issued in In re Clemens.[2]

On November 8, 2006, the trustee filed his First Application for Compensation seeking fees and costs of $82,050. The trustee attached to the Fee Application an itemization of hours expended in this case, which total 169.4. The trustee's hourly rate is $250. Thus, the itemization submitted by the trustee would support a fee award of $42,350. The U.S. Trustee filed a Memorandum in Support, arguing that under §§ 326 and 330, the trustee is entitled to fees as a "statutory commission" regardless of the Court's ruling in Clemens.

### III. ANALYSIS

Under the Court's recent Memorandum Decision in Clemens, the Court is required to consider whether a chapter 7 trustee's fees are reasonable by looking to the amount calculated under § 326, and by simultaneously considering the so-called "Lodestar Factors" discussed in In re Miniscribe Corp.[3] and Johnson v. Georgia Highway Express, Inc.[4] The Court in Clemens specifically held that a chapter 7 trustee is *not* entitled to a flat commission as computed under § 326, but must demonstrate that the requested fee is reasonable under a totality of circumstances test which includes a consideration of the calculation under § 326(a).[5]

   A.   U.S. Trustee's Memorandum in Support

---

[2] 349 B.R. 725 (Bankr. D. Utah 2006).

[3] 309 F.3d 1234 (10th Cir. 2002).

[4] 488 F.2d 714 (5th Cir. 1974).

[5] 349 B.R. at 732.

The U.S. Trustee's Memorandum in Support is essentially a Motion to Reconsider the Court's ruling in Clemens.  The U.S. Trustee contends that Clemens was wrongfully decided, and argues that the Court should grant the trustee's fees "in the first instance according to the fees specified in § 326(a), unless such a fee would constitute unreasonable compensation. . ."  The Court declines to depart from the holding of Clemens.  The Court notes that the U.S. Trustee did not appear at the hearing on the trustee's fee application, or argue in favor of the trustee's fees in the Clemens case, nor did the U.S. Trustee request reconsideration of the Court's decision.  The U.S. Trustee addresses arguments which the Court already considered and rejected in Clemens.  As the ruling in Clemens has not been appealed, the Court declines to reconsider its holding in the context of this case.

    B.    Lodestar Analysis

Under Clemens, the Court should consider the following factors in determining a reasonable trustee's fee:

1. The time and labor required;
2. The novelty and difficulty of the issues involved;
3. The skill requisite to perform the service properly;
4. The preclusion of other employment by the trustee due to his or her acceptance of the appointment as trustee in the case;
5. The customary charges by other professionals involved in the case and by the field in general;
6. The contingent nature of the fee;
7. Time limitations imposed by acceptance of the appointment;
8. The amount generated by the trustee's efforts for creditors and the results obtained;
9. The experience, reputation, and ability of the trustee;
10. The 'undesireability' of the case;
11. Awards in similar cases;
12. Computation of any multiplier for extraordinary results obtained by the trustee;
13. The amount resulting from the calculations under § 326(a);
14. Whether the trustee has engaged in conduct which might justify denial of compensation under § 326(d).
15. Whether notice of the trustee's fee request is appropriate, and whether any party in interest objects to the fees;

5

16. Whether the fees are to be paid from cash collateral and whether the creditor secured by the collateral consents.[6]

As to the first factor, the time and labor required in selling the Dry Farm, the Court finds that the trustee expended significant time and labor in procuring the sale of the Dry Farm. Specifically, the itemization attached to the fee application shows that the trustee expended 169.4 hours in this case thus far which the Court finds reasonable.

As to the second and third factors, the Court finds that whereas the sale of the Dry Farm did not involve novel issues, it did pose some degree of difficulty and did require a high skill level on the part of the trustee. At the inception of this case, the Debtor and AEGON were in highly adversarial positions. The Debtor and its former principal even objected to the trustee's Motion to Approve Bidding Procedures. The trustee demonstrated a high degree of skill to turn the situation towards cooperation — concluding with the Debtor's acquiescence to the sale of the Dry Farm and voluntary cooperation in procuring the trustee's legal title to the real property at issue.

As to the fourth and seventh factors, the preclusion of other employment and time limitations imposed by the case, the Court finds that the trustee expended significant resources in prosecuting his duties in this case. It is unclear to the Court whether the amount of time spent precluded the trustee from taking other cases.

As to the fifth and ninth factors, the Court determines that the hourly rates charged by the trustee are customary for a bankruptcy attorney or trustee of his experience and reputation. The Court also determines that the trustee has a great deal of experience in chapter 7 bankruptcy cases, and demonstrated a high degree of ability in this case.

---

[6] 349 B.R. at 732.

As to the sixth factor, the contingent nature of the fee, the trustee's fees were contingent to the extent that he is paid according to disbursements made in this case. If he had not sold the Dry Farm, he would not be entitled to interim payment in this case.

As to the eighth factor, the amount generated by the trustee's efforts, the Court determines that the trustee's efforts were exceptional in this area. He sold the Dry Farm for significantly more than anyone expected, $200,000 more than the Court adjudicated in the Memorandum Decision Denying the Motion for Relief. In doing so, the trustee generated for the estate a significant amount of money.

As to the tenth factor, the 'undesireability' of the case, the Court does not believe this case was undesireable from the perspective of a potential chapter 7 trustee. The estate has significant real property which, as demonstrated by the trustee's sale of the Dry Farm, can potentially result in significant fees owing to a chapter 7 trustee.

As to the eleventh factor, awards in similar cases, the Court is unaware of any recent case with circumstances similar to this case. The shear size of the real property sold in this case makes the facts of this case unusual.

As to the fourteenth factor, the Court is not aware of any reason why § 326(d) should apply in this case.

As to the fifteenth factor, the Court determines that notice of the fee application is appropriate in all respects. There are no objections filed, but the U.S. Trustee has filed a Memorandum in Support of granting the fee application in its entirety.

As to the sixteenth factor, the Court finds that AEGON is secured by all the cash proceeds generated from the sale of the Dry Farm. It has specifically consented to the trustee's

use of its cash collateral for the payment of his requested fees. This factor is significant. Without this consent, the trustee may not have been entitled to any trustee's fees.

The final consideration under Clemens is the amount calculated under § 326(a). In this case, § 326(a) would impose a ceiling on the trustee's fees of $82,050. As discussed by the Court in Clemens, the Court must consider this calculation together with the factors discussed above. Looking at the traditional Lodestar factors discussed above, the Court would normally award the trustee fees commensurate with the hours he expended in this case — $42,350. But the amount calculated under § 326(a) is significantly higher than this amount, and the Court is required to take that into consideration. On that basis, and after considering the totality of circumstances in this case, the Court determines that a reasonable trustee's fee is $62,200.

C.   Lodestar Multiplier

To award the full amount of the fees requested by the trustee, the Court would need to award a 'Lodestar multiplier' of 1.32. The Court should only award a multiplier where the trustee achieved an extraordinary result in a case.[7] The Court finds instructive the discussion of a multiplier's propriety in Forshee v. Waterloo Industries, Inc., wherein the Eighth Circuit Court of Appeals stated:

> An upward adjustment to an attorney's lodestar hourly rate is permissible in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts. Because the lodestar amount may already compensate the applicant for exceptionally good service and results, however, the fee applicant must do more than establish outstanding service and results. The applicant must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended.[8]

---

[7] See Miniscribe, 309 F.3d at 1245.

[8] 178 F.3d 527 (1999).

8

The trustee's sale of the Dry Farm was above anyone's expectations. That said, however, the trustee's efforts were not extraordinary. The trustee is an accomplished and experienced bankruptcy attorney and trustee. He routinely performs his services admirably and competently and the services performed in this case were no exception. But the trustee is already being compensated for these services through an hourly rate of $250 per hour. The labor expended by the trustee was not uncommon, and the result, while favorable to the estate, was not beyond expectation. Accordingly, the Court determines that a reasonable fee award for the trustee is $62,200 without the application of a Lodestar multiplier.[9]

## IV. CONCLUSION

The trustee's Fee Application should be GRANTED to the extent of $62,200. A separate order accompanies this Memorandum Decision.

---

[9]The Court notes that the instant matter is an interim fee application filed by the trustee. Today's decision does not mean that the Court will never impose a multiplier in this case. The Court might have reason to impose a multiplier with regards to subsequent fee application and in light of future success in this case.

Service of the foregoing **MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR FEES** will be effected through the Bankruptcy Noticing Center to each party listed below.

Joel Marker
Jeremy Sink
McKay Burton & Thurman
170 South Main Street, Suite 800
Salt Lake City, UT 8101

Paul Toscano
Boston Building, Suite 419
9 Exchange Place
Salt Lake City, UT 84111

M. Robert Smith
31 Federal Avenue
Logan, UT 84321

Danny Kelly
Stoel Rives
201 South Main Street, Suite 1100
Salt Lake City, UT 84111

Russell Walker
Woodbury & Kesler
265 East 100 South, Suite 300
Salt Lake City, UT 84111

Cy Castle
U.S. Trustee
Ken Garff Building, Suite 300
405 South Main Street
Salt Lake City, UT 84111
United States Trustee