Danny C. Kelly (1788)
Brandy A. Sargent (OSB No. 04571)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131
Facsimile: (801) 578.6999

Attorneys for AEGON USA Realty Advisors, Inc. and
 Life Investors Insurance Company of America

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>GEORGE LOVE FARMING, LLC,<br><br><br>Debtor. | Case No. 06-20612<br><br>Chapter 7<br><br><br>Judge William T. Thurman<br><br>[Filed Electronically] |

## LIICOA'S OBJECTION TO DEBTOR'S MOTION
## TO CONVERT TO CHAPTER 11

Life Investors Insurance Company of America ("**LIICOA**"), a creditor and party in

interest, hereby objects to the Motion to Convert (the "**Motion**") filed by debtor George Love

Farming, L.C. ("**Debtor**" or "**Love Farming**") and, in support hereof, respectfully represents as

follows:

## BACKGROUND

1. On May 19, 2003, George Love (**"Love"**), Snowville Farms, LLC (**"Snowville"**), Valayne Love ("**Mrs. Love**", and Debtor (collectively, the **"Borrowers"**)), entered into a Loan Agreement (the **"Loan Agreement"**) with LIICOA pursuant to which LIICOA loaned $5,500,000 (the **"Loan"**) to the Borrowers.

2. The obligations of the Borrowers under the Loan Agreement are secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the **"Deed of Trust"**).

3. Under the Deed of Trust and other loan documents, the Borrowers granted to LIICOA a security interest in, among other things, two farms located in Box Elder County, Utah, known as the Sanda Rosa Hay Farm (the **"Sanda Rosa Farm"**), and the Snowville Dry Farm (the **"Dry Farm"**).

4. On or about August 12, 2003, the Borrowers made a Loan payment (approximately two months of interest only) due on July 15, 2003. The Borrowers, however, made no further payments due under the Loan Agreement.

5. In view of the Borrowers' defaults, on June 14, 2004, LIICOA filed a Notice of Default and Election to Sell under the Deed of Trust and applicable Utah law. The Borrowers, however, failed to cure their defaults and reinstate the Loan.

6. Accordingly, on September 17, 2004, LIICOA filed a Notice of Trustee's Sale, which provided for a Trustee's Sale of the Farms on October 19, 2004 (the **"Foreclosure Sale"**).

7. To stop the Foreclosure Sale, on October 12, 2004, Snowville and George Love filed voluntary petitions (the **"Chapter 11 Cases"**) under Chapter 11 of the Code (Snowville and George Love are sometimes referred to hereinafter collectively as the **"Chapter 11 Debtors"**).

8. On May 20, 2005, the estates of the Chapter 11 Debtors, along with Debtor, George Love Farming Partnership and George Love Family Partnership (collectively, the **"Consolidated Parties"**) were substantively consolidated by consent of the parties and an order of this Court.

9. On November 15, 2005, following extensive discussions and negotiations among the Consolidated Parties, LIICOA and other parties in interest, the Consolidated Parties filed a motion to confirm a joint plan of reorganization.

10. On November 16, 2005, a confirmation hearing was held wherein various plan amendments were read into the record and the requisite evidence was proffered and received. The Court thereafter ruled that the Consolidated Parties' joint plan of reorganization would be confirmed after the plan proponents had taken certain actions required by the Court at the hearing.

11. On December 19, 2005, this Court entered an Order confirming the Consolidated Parties' Joint Plan of Reorganization, as then amended (the **"Plan"**). The Plan became effective on or about December 30, 2005 (the **"Effective Date"**).

12. The Plan provided that Barnes Banking Company (**"Barnes"**) held an allowed claim secured by, among other things, a first priority security interest in the crops grown on the Farms, and that an initial payment of $550,000 was to be paid to Barnes on the Effective Date.[1]

13. The Plan also provided that LIICOA held an allowed secured claim in the amount of $7,011,910.97 secured by a perfected first priority lien in the Farms. *Plan*, §§ 2.6, 3.1.1 and 4.3.1. The Plan required an initial payment to be paid to LIICOA by January 20, 2006.[2]

---

[1] In fact, George Love testified that at the end of December 2005, only $12,000 remained in the Consolidated Parties' bank account. March 1, 2006 Transcript pg. 69.

[2] Of course, the Plan required the Consolidated Parties to make certain payments to other creditors and perform other obligations. Because the debtors have filed no reports and provided no

14. One day after the Effective Date, the Consolidated Parties defaulted under the Plan by failing to make the required $550,000 payment to Barnes. Barnes thereupon declared a default and began to take enforcement actions.

15. On January 20, 2006, the Consolidated Parties further defaulted under the Plan by failing to pay LIICOA its required payment of $320,000. LIICOA notified the Consolidated Parties that they were in default under the Plan and initiated enforcement actions in accordance with the Plan. More particularly, LIICOA rescheduled the Foreclosure Sale for March 7, 2006.

16. To stop the enforcement actions of Barnes and LIICOA, on January 26, 2006, debtors filed a Joint Motion of Reorganized Debtors for Order Authorizing Amendment of Treatment of Barnes Banking Company and Life Investors Insurance Company of America and for Order Authorizing Short-Term FSA Loan (the "**Amendment Motion**") seeking to provide treatment of Barnes and LIICOA materially different than the treatment required by the Plan.

17. At a February 1, 2006 hearing on the Amendment Motion, the Court held that the Plan could not be modified pursuant to Section 1127(b) of the Code because, among other things, the Plan had been substantially consummated.

18. On February 10, 2006, the reorganized debtors filed a Joint Motion for Order Enforcing the Debtors' Confirmed Joint Plan of Reorganization (the **"Enforcement Motion"**) seeking essentially the same relief that they had requested in the Amendment Motion.

19. On February 21, 2006, the debtors filed an adversary proceeding and a Motion for Preliminary Injunction seeking to enjoin the Foreclosure Sale (the **"Injunction Motion"**).

---

accountings of what they have done with any funds and other property in their possession, it is not currently known what other payments have been made since the Effective Date. To the best of LIICOA's knowledge, however, the Consolidated Parties have not made further payments or performed their obligations to other creditors under the Plan.

SaltLake-305001.3 0027690-00044                     4

20. On March 3, 2006, the Court held a hearing on the Enforcement Motion and the Injunction Motion and denied both motions.[3] In doing so, the Court expressly found that LIICOA and Barnes were not in breach of the Plan, and that the Plan did not require LIICOA or Barnes to sign lien waivers to accommodate debtors' post-confirmation efforts to obtain financing from the Farm Service Agency (**"FSA"**).[4]

21. On March 6, 2006, the day before LIICOA's rescheduled Foreclosure Sale, the debtors (except for George Love) filed a motion to convert the substantively consolidated Chapter 11 Cases to Chapter 7 cases (the **"Conversion Motion"**). At a hearing held the same day, the Court denied the Conversion Motion.

22. The following morning (i.e., March 7, 2006), Debtor, purportedly on a *pro se* basis, filed this Chapter 7 case. As a result, the Foreclosure Sale was cancelled again.[5]

23. On March 24, 2006, Joel T. Marker was appointed as the Chapter 7 trustee of Debtor's estate (the **"Trustee"**).

24. On May 25, 2006, the Trustee filed a motion seeking approval to sell the Dry Farm for $1,825,000 (the "**Dry Farm Sale**").

---

[3] The debtors appealed the Court's orders denying the Enforcement Motion and the Injunction Motion to the United States Bankruptcy Appellate Panel of the Tenth Circuit (**"BAP"**). The appeal of the order denying the Enforcement Motion was argued and submitted to the BAP on January 23, 2007 but no decision has been rendered to date. Both the adversary proceeding and the Injunction Motion have been dismissed without prejudice.

[4] The alleged purpose of the hoped for FSA financing was to help the debtors to make some payments to LIICOA and Barnes. However, the Court found at the March 3, 2006 hearing that "even if Snowville could obtain the FSA loan, it would not be able to make timely payments to Barnes and LIICOA as required by the plan." March 3, 2006 Transcript pg. 217. What difference an FSA loan would make after more than a year of plan defaults is entirely unclear.

[5] The Foreclosure Sale was noticed for March 7, 2006 at 10:00 a.m., and Debtor filed its chapter 7 petition at 9:19 a.m. (i.e., just 41 minutes before the sale).

25. On June 21, 2006, George Love caused Debtor to file a motion to convert this case to a Chapter 12 case (the **"Chapter 12 Motion"**) in an apparent attempt to scuttle the Dry Farm Sale and frustrate the Trustee's duties under Chapter 7 to liquidate Debtor's estate and pay creditors. Eventually, however, the Dry Farm Sale was approved and closed.

26. On June 28, 2006, and in order to put himself in a position to sell the Sanda Rosa Farm without the consent of co-owners if need be, the Trustee filed an adversary proceeding seeking authority to sell the Farm pursuant to Section 363(h) of the Code in light of the purported joint interests of the Borrowers other than Farming LC in the Farm (the "**Adversary Proceeding**").

27. On October 4, 2006, the Court entered a stipulated judgment in the Adversary Proceeding (the "**Judgment**"). The parties expressly stipulated and the Judgment expressly determined that the Trustee "has authority to sell both the estate's interest and the interest of any co-owner in Sanda Rosa (including all related fixtures and equipment) . . . ." *Judgment*, ¶ 1. The parties also stipulated and the Judgment also provided that "[t]he Defendants' right to object to the proposed sale of the Property *on the basis of price* and right to object to claims filed in the main bankruptcy case . . . are herein preserved." *Judgment*, ¶ 6 (emphasis provided).

28. On March 8, 2007, the Trustee filed a motion seeking to sell Sanda Rosa for $6,000,000, subject to higher and better bids (the "**Sanda Rosa Sale**"). The Sanda Rosa Sale includes the 42 Pivots and provides for a $250,000 escrow relating to the Pivots. The proposed sale also requires the Trustee to deliver possession of Sanda Rosa to the proposed purchaser by April 15, 2007.

29. An auction relating to the Sanda Rosa Sale is scheduled for March 22, 2007, and the hearing on the Sanda Rosa Sale is scheduled for March 26, 2007. In the meantime, the

Trustee and his estate real estate broker, Highland Commercial, Inc. (**"Highland"**), have continued to show Sanda Rosa to potential bidders.

## SPECIFIC ALLEGATIONS IN THE MOTION

30. In paragraph 1 of the Motion Debtor alleges that (a) it is only a 25% owner of Sanda Rosa, (b) the owners of the remaining 75% have been operating under Chapter 11, (c) Debtor "cannot continue to operate under Chapter 7 while affiliated entities are operating in Chapter 11," a Chapter 7 liquidation "is in direct conflict" with the ability of the Debtor to operate a farm, and (d) the value of the estate will be maximized "with all of the Love entities operating pursuant to Chapter 11."

31. In paragraph 2 of the Motion Debtor alleges that with LIICOA's receipt of the net sale proceeds of the Dry Farm "Debtor and its affiliated entities are in a better position to pay creditors' claims if Debtor is able to convert to Chapter 11."

32. In paragraph 3 of the Motion Debtor alleges conversion to Chapter 11 allows Debtor and affiliates to take advantage of favorable government financing through the FSA with which "Debtor will better be able to pay its creditors . . . ."

33. In paragraph 4 of the Motion Debtor alleges that "debtors are allowed a one-time conversion of a case pursuant to 11 U.S.C. § 706(a)" absent "atypical" bad faith behavior.

34. In paragraph 5 of the Motion Debtor alleges that a forced Chapter 7 liquidation will not realize full value of the Sanda Rosa Farm but Chapter 11 would.

## DISCUSSION

35. In the Supreme Court's recent decision in <u>Marrama v. Citizens Bank of Massachusetts</u>, 127 S. Ct. 1105 (2007), the Court held that Section 706(a) does not contain an absolute right to convert a case from Chapter 7 to another chapter. Instead, the Court found that

Section 1307(c) of the Bankruptcy Code allows for dismissal or conversion to Chapter 7 of a case based on bad faith conduct, which is tantamount to a finding that the individual does not qualify for relief and that conversion should not be allowed pursuant to Section 706(d).[6] In so doing, the Court stated: "In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, in not a member of the class of 'honest but unfortunate debtors' that the bankruptcy laws were enacted to protect." Id. at 1111.

36.     Although Love Farming seeks to convert its case to one under Chapter 11, the holding in Marrama is no less applicable to this case. Section 1112(b) of the Bankruptcy Code is similar to Section 1307(c), and provides a list of sixteen reasons that a Chapter 11 case can be dismissed or converted for cause.

37.     The list of items that constitute cause under Section 1112(b)(3) is not exhaustive. 7 Collier on Bankruptcy ¶ 1112.04[3] (2006) ("whereas cause defines the general categories of cases in which it is usually true that reorganization should not proceed, the discretionary aspect of Section 1112(b) permits the court to conduct a tailor-made inquiry into whether the facts of the particular case remove the matter from the norm and justify continuance of the Chapter 11 process."). Therefore the Court must consider all of the facts and circumstances in determining if there is cause to dismiss or convert Chapter 11 case, and by extension, if a Chapter 7 debtor would be barred from conversion to Chapter 11 by Section 706(d) and Marrama.

---

[6] Section 706(d) provides that "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."

38. When they operated in the Chapter 11 Cases, the Consolidated Parties had to be ordered to maintain insurance on the Property, had to be prohibited by Court order from making unauthorized transfers to non-debtor parties, consistently filed late operating reports, and defaulted on their responsibilities to pay Barnes and LIICOA under the confirmed Plan. None of the projections of income or expenses proffered by the Consolidated Parties were accurate, resulting in a bank balance of $12,000 to pay $820,000 in payments to secured creditors.

39. Rather than allowing LIICOA to exercise its rights under the Plan and to continue the Foreclosure Sale, Debtor filed this case. In so doing, Debtor repeatedly represented that the intention in filing this case was to allow the Trustee to liquidate the Property for the benefit of creditors. See Memorandum In Opposition to Motion to Dismiss (Docket No. 9):

> In the case at hand, not only has George Love Farming proposed a liquidating case, this would be a liquidating case under chapter 7 which demonstrates a higher level of intent to liquidate than the debtor in Jartran, because the liquidation in this case would not be conducted by the debtor itself but rather under the control and supervision of the trustee. Pg. 6.

> The intent of this bankruptcy proceeding is to liquidate the Debtor's assets for the benefit of and in the best interest of all creditors and therefore precludes dismissal under Bankruptcy Code sec. 707. LIICOA has deemed this chapter 7 petition to be in bad faith. On the contrary, the purpose of the prior chapter 11 proceeding was to reorganize and continue as a going concern which is in sharp contract to the purpose of this petition which is to accomplish an orderly liquidation for the benefit of all creditors, including LIICOA. The only continued business operations would be for the purpose of winding up, preserving assets and dissolution. Had George Love Farming filed a new Chapter 11 petition with the aim of attempting a second reorganization plan, LIICOA's argument might prevail. Pg. 9.

See also March 13, 2006 Transcript pg. 32-34:

> I can say that it would not be the intent of George Love Farming to continue to pester the Court with additional bites of the apple that the Court might, depending on what the Court might rule today, but we believe with the facts before the Court right now that there

> is good faith in this filing, that Mr. Love through George Love
> Farming, LC is turning over the operation of the farm to the trustee
>
> . . .
>
> Your Honor, George Love Farming is not trying to get around the
> other orders of this Court. In fact, the most latest order, as I
> understand it, was that the property had vested back in the debtor
> and therefore the Court could not convert the case. Based on that
> we believe that the debtor then had the ability or the ball thrown to
> the debtor for the debtor to make a decision whether it should file a
> Chapter 7 or not or maybe a Chapter 11 liquidation but this debtor
> chose to file a Chapter 7 liquidation and because that is a
> liquidation plan, it's very distinct. The purpose is completely
> different from a Chapter 11 and it's basically an admission that the
> property needs to be liquidated in favor of all creditors.

40. Per order of this Court, Debtor also filed an "Agreement as to ownership of

Property" (Docket No. 40) in which it states:

> Debtor hereby agrees that all interests in and to both of the
> foregoing real property are subject to this Court's jurisdiction in
> this case number 06-20612 and fully subject to the Trustee's legal
> ownership for administration hereunder. Debtor further represents
> that it has obtained or will obtain the agreement of Snowville
> Farms, LLC, George B. Love and Valayne Love to the foregoing.
> The Debtor further represents that it will obtain any and all deeds
> needed to transfer legal title to the Trustee of all of the two Box
> Elder County farms and that all of the foregoing legal and
> equitable owners will fully cooperate with the Trustee with regard
> to any sale thereof.

41. However, George Love and Debtor have not cooperated with the Trustee to

orderly liquidate the Property. The various parties refused to convey their interests to the

Trustee, objected to the Dry Farm Sale (Docket No. 77), and filed the Chapter 12 Motion,

necessitating the Adversary Proceeding and the Judgment.

42. As indicated above, notwithstanding the Judgment, George Love has declared that

the Trustee has no authority to sell the interests of any co-owner in the Sanda Rosa Farm and that

the Trustee must file another suit in order to sell such interests. The debtors have also stated

unequivocally that the Sanda Rosa Sale will not occur.

SaltLake-305001.3 0027690-00044                    10

43. In short, George Love caused the Debtor to file this case, representing that he fully intended to allow the Trustee to liquidate the Property for the benefit of creditors, but has done his best to prevent the sale of the Property.

44. Furthermore, there is no way for the debtor to operate in Chapter 11 at this time. Defaults continue with respect to all of the material obligations under the Plan which has essentially been abandoned by the Debtor and George Love and is, in any event mooted by the sale of the Dry Farm. There is no way that the Debtor can operate in Chapter 11 with no capital, no funding, and the demonstrated inability to effectuate a confirmed plan.

45. Finally, there is no reason to believe that Debtor will market the Property in good faith or receive a higher and better offer than the Trustee has already received. LIICOA and Debtor's other creditors have been delayed for two and a half years by these cases and should not be subject to further, unnecessary delay.

46. Based on totality of the circumstances in this case, ample reason exists to find that Debtor is not entitled to be a debtor in possession in a Chapter 11 case because of (a) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (b) gross mismanagement of the estate; (c) failure to maintain appropriate insurance; (d) unauthorized use of cash collateral; (e) failure to comply with orders of the court; (f) unexcused failure to satisfy timely reporting requirements; (g) failure to appear at a noticed deposition; (h) failure timely to pay taxes; and (i) material default by the debtor with respect to a confirmed plan. In addition, the Court should find that George Love and his various entities have not demonstrated good faith in their conduct in this case or in attempting to convert this case. Debtor has the ability to object to the Sanda Rosa Sale based on price; if the price is not appropriate then the Court can deny the sale.

## **CONCLUSION**

Based on the foregoing, LIICOA respectfully requests that the Court enter an order (a) denying the Motion and (b) providing such further relief as the Court may deem appropriate.

DATED: March 20, 2007.

        STOEL RIVES LLP


        /s/Brandy A. Sargent
        Brandy A. Sargent
        Attorneys for AEGON USA Realty Advisors, Inc.
        and Life Investors Insurance Company of America

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2007, a true and correct copy of the foregoing

**LIICOA'S OBJECTION TO DEBTOR'S MOTION TO CONVERT TO CHAPTER 11**

was served via electronic mail and first class mail, postage prepaid, on each of the following parties:

> M. Robert Smith
> 31 Federal Avenue
> Logan, UT  84321
>
> Paul J. Toscano
> 9 Exchange Place,  Suite 419
> Salt Lake City, UT  84111
>
> Russell S. Walker
> WOODBURY & KESLER
> 265 East 100 South, Suite 300
> P.O. Box 3358
> Salt Lake City, UT  84111
>
> Joel T. Marker
> Jeremy C. Sink
> McKAY BURTON & THURMAN
> 170 South Main Suite, Suite 800
> Salt Lake City, UT  84101
>
> Mona L. Burton
> HOLLAND & HART
> 60 East South Temple, Suite 2000
> Salt Lake City, UT  84111
>
> Robert J. Dale
> FABIAN & CLENDENIN
> 215 South State Street, 12th Floor
> P.O. Box 510210
> Salt Lake City, UT  84111

/s/Brandy A. Sargent